No. 88-601

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

_____

STATE OF MONTANA,

       Plaintiff and Appellant,

  -vs-

KEVIN LESLIE DELAP,

       Defendant and Respondent.

_____

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph Gary, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bruce E. Becker, City Attorney, Bozeman, Montana
        Karl P. Seel, Bozeman, Montana

    For Respondent:

        James A. Johnstone, Bozeman, Montana

_____

Submitted on Briefs: March 23, 1989

Decided: May 10, 1989

Filed:

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

The State of Montana appeals the order of the Eighteenth Judicial District Court, Gallatin County, dismissing two charges against Kevin Delap (Delap). Delap was convicted in City Court in Bozeman, Montana, of violating § 61-8-401, MCA, driving under the influence, and § 23-2-631, MCA, operating a snowmobile on a city street. Delap appealed his conviction to the District Court which dismissed both charges. In dismissing the § 61-8-401, MCA, charge, the District Court noted that the dismissal does not preclude the State from charging Delap under § 23-2-632(1)(b), MCA, the snowmobile DUI statute. We affirm the order of the District Court as to dismissal of the § 61-8-401, MCA, charge.

On December 13, 1987, Bozeman city police arrested Delap. At the time of his arrest, Delap was operating a snowmobile. His blood alcohol was determined by a breath test to be .174.

After Delap was convicted in City Court of both offenses charged, he appealed and was tried in District Court on October 14, 1988. Following trial, the court dismissed the charge under § 61-8-401, MCA, and found § 23-2-631, MCA, inapplicable because a controlled access highway was not involved.

The State presents two issues on appeal:

1. Is a snowmobile a vehicle as defined in § 61-1-103, MCA, and thus subject to the restrictions in § 61-8-401, MCA, prohibiting the operation of a vehicle upon the ways of the state while under the influence of alcohol?

2. Does the civil offense of driving a snowmobile while under the influence of alcohol in violation of

2

§ 23-2-623(1)(b) supersede and preclude charging a defendant under § 61-8-401, MCA?

Delap was charged with violating § 61-8-401, MCA. The pertinent part of this statute provides:

> Persons under the influence of alcohol or drugs. (1) It is unlawful and punishable as provided in 61-8-714 and 61-8-723 for any person who is under the influence of:
>
> (a) alcohol to drive or be in actual physical control of a vehicle upon the ways of this state open to the public[.]

Section 61-8-401(1)(a), MCA. As used in this statute, the term vehicle is defined as follows:

> "Vehicle" means every device in, upon, or by which any person or property may be transported or drawn upon a public highway, except devices moved by animal power or used exclusively upon stationary rails or tracks. However, in chapters 3 and 4, the term means "motor vehicle" as defined in this part; and in chapter 8, part 4, this term does not include a bicycle as defined in 61-1-123.

Section 61-1-103, MCA. Our reading of the plain language of this statute indicates a snowmobile fits within this definition of a vehicle. A snowmobile is a device upon which a person or property may be transported upon a public highway under certain conditions. It is not driven by animal power and does not utilize stationary rails or tracks. It also does not fit within the definition of a bicycle, the only device excluded from Title 61, Chapter 8, part 4, as defined in § 61-1-123, MCA.

We note however, that snowmobiles are not defined in Title 61, Chapter 8, part 1, although other types of vehicles are specifically defined therein. Instead, snowmobiles are defined as follows:

> "Snowmobile" includes any self-propelled vehicle of an overall width of 48 inches or less, excluding accessories, designed primarily for travel on snow or ice, which may be steered by skis or runners and which is not otherwise registered or licensed under the laws of the state of Montana.

Section 23-2-601(10), MCA. Further, Title 23, Chapter 2, part 6, provides statutory regulation for the operation of snowmobiles on public streets and highways. Section 23-2-631, MCA. Of particular note is § 23-2-632(1)(b), MCA, which makes the operation of a snowmobile upon a public street or highway unlawful while under the influence of intoxicating liquor or narcotics or habit-forming drugs.

The general rule of statutory construction commands that the more specific statute shall control over the general statute. Section 1-2-102, MCA. The legislature in enacting Title 23, Chapter 2, part 6, duplicated with specificity the motor vehicle code concerns for regulation of snowmobiles upon the public streets, roadways, and highways. Viewing the foregoing provisions in conjunction with sections which provide for registration, licensing, accidents, enforcement, penalties, and disposition of fines and forfeitures, we find the legislature provided a statutory scheme which supplants the motor vehicle code regarding snowmobiles.

The State, however, contends § 61-8-401, MCA, provides for criminal sanctions while Title 23, Chapter 2, part 6, provides for civil sanctions. As such, they are supplemental rather than conflicting and may be imposed for the same occurrence. See One Lot Emerald Cut Stones v. United States (1972), 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438. However, "the question whether a particular statutorily defined penalty is civil or criminal is a matter of statutory construction." (Citations omitted.) United States v. Ward

4

(1980), 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742, 749. A court's determination of the proper statutory construction depends upon a determination of two issues: (1) whether the legislature expressly or impliedly labeled the penalty as civil or criminal, and (2) if the legislature has identified the penalty as civil, whether the statutory scheme is "so punitive either in purpose or effect as to negate that intention." Ward, 448 U.S. at 248-49. When making the second inquiry, "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." (Citations omitted.) Ward, 448 U.S. at 249.

After consideration of the first level test in light of the statutes relevant to this case, we find clear legislative intent to impose a civil penalty for operating a snowmobile upon the streets or highways of this state while under the influence of drugs or alcohol. Section 23-2-642, MCA, clearly states that the penalty levied for violation of §§ 23-2-601 through 23-2-644, MCA, is a civil penalty. Examination of the legislative history of Title 23, Chapter 2, part 6, shows this part originally provided that violation of any section of the act was considered a criminal misdemeanor, "punishable by fine or imprisonment or both" under the laws applying to persons owning or operating motor vehicles when the violation occurred on public highways. Section 53-1023, R.C.M. 1947 (1971). This penalty provision was amended by the 1974 legislature, to read as follows:

> 53-1023. Penalties. (1) A person who violates any provision of this act or a rule and regulation adopted pursuant thereto shall pay a civil penalty of not less than fifteen dollars ($15) nor more than five hundred dollars ($500) for each separate violation.
>
> (2) A person who willfully violates any provision of this act or a rule or

5

> regulation adopted pursuant thereto shall
> pay a civil penalty of not less than
> fifty dollars ($50) nor more than one
> thousand dollars ($1,000) for each
> separate violation.

The legislative history, however, fails to provide an explanation as to why the legislature changed the statute, thereby naming the penalty as civil rather than criminal.

The civil label, however, will not always be dispositive. Allen v. Illinois (1986), 478 U.S. 364, 369, 106 S.Ct. 2988, 2992, 92 L.Ed.2d 296, 304. We must also determine whether intent to provide a "civil, remedial mechanism" has instead resulted in sanctions so punitive as to constitute a criminal penalty. Ward, 448 U.S. at 249. The United States Supreme Court has held that where a section exhibits "an intent to prohibit and to punish violations of state law . . . the sum it exacts [is] a penalty." United States v. Constantine (1935), 296 U.S. 287, 295, 56 S.Ct. 223, 227, 80 L.Ed. 233, 239.

A conviction under § 23-2-632(1)(b), MCA, will result in a "civil penalty" of not less than $15 nor more than $500 for each separate violation. Section 23-2-642(2), MCA. However, if a person willfully violates § 23-2-632(1)(b), MCA, they shall pay a civil penalty of not less than $50 nor more than $1,000 for each separate violation. Section 23-2-642(3), MCA.

This statutory penalty provision levies a fine upon the action of a snowmobile operator for violating certain provisions of state law. In Helwig v. United States (1903), 188 U.S. 605, 610-11, 23 S.Ct. 427, 429, 47 L.Ed. 614, 616, the United States Supreme Court found that where the law levies fines or forfeitures as punishment for a particular act, those fines or forfeitures constitute criminal penalties. Such penalties reflect the traditional aims of

6

punishment, retribution, and deterrence. Constantine, 296 U.S. at 295. Furthermore, we note that § 23-2-644, MCA, provides that while the penalties collected are to be applied to a special revenue account for snowmobile safety and education, any penalties collected in justice court are applied to the traditional funds to which criminal fines are applied.

Our review of the statutory scheme and its attendant penalties leads us to conclude the penalties provided in § 23-2-642(2) and (3), MCA, are punitive in nature and constitute criminal penalties.

Having found that the statutory scheme supplants rather than supplements the motor vehicle code, it is incumbent that we affirm the District Court's decision that Delap could not be charged under § 61-8-401, MCA, for operating a snowmobile upon public streets and highways while under the influence of alcohol. To hold otherwise would contradict a basic rule of statutory construction, § 1-2-102, MCA, and would provide conflicting criminal penalties for the same act.

The State also contends in its brief that the District Court's dismissal of the § 23-2-631, MCA, charge against Delap was erroneous. While we find merit in the State's argument on this charge, we unfortunately find this issue is not properly before this Court. The State in filing its notice of appeal designated that it was appealing the dismissal of the § 61-8-401, MCA, charge from the November 17, 1988, order of the District Court. Rule 4(c), M.R.App.P., provides a notice of appeal "shall designate the judgment, order or part thereof appealed from." The State designated a part of the order for appeal, and we will not now consider an appeal from any other part of the order. We set forth the foregoing analysis of the § 23-2-631, MCA, charge simply for guidance purposes.

7

The order of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8

Mr. Justice R. C. McDonough dissents:

A legislative body may impose both criminal and civil sanctions for the same occurrence. See One Lot Emerald Cut Stones v. United States (1972), 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438. That has been done here in explicit terms.

The majority uses the incorrect premise that the two statutes are inconsistent in order to reach its conclusion that the specific prevails over the general in arriving at the intention of the legislature under § 1-2-102, MCA. The two statutes are not inconsistent. One is criminal, one is civil, serving different purposes and requiring different burdens of proof. Each is part of a separate body of law; each has a different method of enforcing sanctions and establishes a different punishment. The majority expresses puzzlement with the 1974 amendments to the snowmobile statutes, noting that the legislative history fails to explain why the legislature changed the penalty from criminal to civil. However, before resorting to legislative history, it should be noted that the change made by the legislature in 1974 on its face resolved any conflict that may have existed with the Motor Vehicle Code.

The majority cites the U.S. Supreme Court decision in Helwig v. United States (1903), 188 U.S. 605, 23 S.Ct. 427, 47 L.Ed. 614, for the proposition that where a law levies a fine or forfeiture as punishment for a particular act, that fine constitutes a criminal penalty. This is a misreading of the Helwig case. Helwig dealt with an importer of wood pulp who had undervalued his shipment for the purposes of avoiding customs fees. Upon discovery of the undervaluation, the Federal Government required Helwig to pay the difference between the fee he was charged and the fee he should have been charged. Because Helwig's shipment was undervalued by

more than 10%, he was also assessed what the customs statutes termed an "additional fee" based on the percentage of the undervaluation. Helwig was brought before a U.S. Circuit Court for trial, as provided for in customs law. He objected to jurisdiction by claiming that the "additional fee" was in fact a penalty, and district courts by statute had exclusive jurisdiction in cases involving a penalty or forfeiture. The dispute was thus about jurisdiction under customs law. The Supreme Court found the additional fee to be a penalty, but the word "criminal" appears nowhere in the opinion.

In any event, the civil sanctions or penalties in this case are not so punitive as to constitute criminal penalties. The civil penalties in the snowmobile statutes are roughly equal to the criminal penalties in the Motor Vehicle Code insofar as monetary sanctions are concerned, but this does not make them criminal. There are numerous cases where civil monetary sanctions have actually exceeded criminal monetary sanctions; e.g., criminal fraud and punitive damages for fraud, antitrust penalties, and civil forfeiture of property deemed to be contraband. In this case, by saying the civil sanctions are punitive and criminal in nature, the majority is converting a designated civil statute into a criminal statute even though the regular criminal statute levies more severe penalties, such as incarceration. The majority then applies it as a specific criminal statute to overrule a more general criminal statute when there is no fundamental inconsistency between the two. I would reverse and remand for trial on the criminal charge.

_____
Justice

10