No. 00-273

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 145

DALE AND SHAWONDA LEWIS and THE FORT UNION INN,

Plaintiffs and Appellants,

v.

PUGET SOUND POWER & LIGHT CO.; PORTLAND GENERAL

ELECTRIC CO.; WASHINGTON WATER POWER CO.;

PACIFICORP; MONTANA POWER CO.; and WESTERN ENERGY,

Defendants, Respondents and Cross-Appellants.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Rosebud,

Honorable Richard G. Phillips, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Turner C. Graybill and Todd A. Stubbs, Graybill, Ostrem & Crotty,

Great Falls, Montana

For Respondents:

Carolyn S. Ostby and Jon Dyre, Crowley, Haughey, Hanson, Toole

& Dietrich, Billings, Montana (Montana Power; Pacificorp, and

Washington Power)

Guy Rogers, Brown, Gerbase, Cebull, Fulton, Harmon & Ross,

Billings, Montana (Western Energy)

John Crist, Crist Law Office, Billings, Montana (Puget Sound)

Stephen H. Foster, Holland & Hart, Billings, Montana (Portland General)

Submitted on Briefs: January 11, 2001

Decided: August 6, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Dale and Shawonda Lewis and the Fort Union Inn, Inc. (Dale and Shawonda) brought suit in the Sixteenth Judicial District Court to recover damages for injury to the Fort Union Inn, which they claim was caused by the defendants, a group of mining and power generating companies (Companies). The complaint alleged five counts: negligence, nuisance, trespass to land, negligent infliction of emotional distress and unfair claims settlement practices. In separate orders, the District Court granted summary judgment in favor of the Companies on the nuisance count, the unfair claims settlement count and then the three remaining counts. Dale and Shawonda appeal all but the ruling on the unfair claims settlement count. In addition, several of the Companies have cross-appealed, asking this Court to recognize additional grounds for summary judgment in the appealed orders. We affirm in part, reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The Companies developed and operate coal mines, power generating facilities and other related property near Colstrip, Montana. As is often the case where large-scale industrial operations take place in close proximity to other businesses and residences,

many nearby property owners, including the owners of the Fort Union Inn (Inn), claimed that mining and generating activities had damaged their properties. Much of what follows turns on two issues raised by the parties in the course of litigating this claim: the ownership of the Inn at the time Dale and Shawonda filed their suit and the ownership of a claim for damage to the Inn that arose prior to Dale and Shawonda's lawsuit.

¶3 Prior to October 1996, the Inn was owned by A. L. Koelzer (Koelzer) and R. L. Brown, who operated it as the Fort Union Company, a general partnership. On June 16, 1994, Koelzer filed a damage claim on behalf of the Fort Union Company alleging that mine blasting had caused approximately $1,450 worth of damage to the Inn's window seals, door frames and exterior sidewalks. Koelzer did not pursue the claim, however, and it was never resolved while the Fort Union Company owned the Inn.

¶4 In October 1996, Dale and Shawonda approached Koelzer and Brown about buying the Inn. In the course of their discussions Koelzer told them about the damage to the Inn and his damage claim against the Companies. Shortly thereafter, Dale and Shawonda inspected the Inn and discovered additional, widespread, damage to the floor joists. The discovery of this additional damage led Koelzer to reassert his claim against the Companies although, again, the matter was not pursued to resolution.

¶5 Despite the damage, Dale and Shawonda offered to buy the Inn for $225,000. This offer fell through when they were unable to obtain financing. Eventually, however, the Inn was sold to Dale's parents, Sammy and Darlene Lewis (Sammy and Darlene) for $200,000. All the members of the Lewis family understood that, although Sammy and Darlene held title to the Inn, Dale and Shawonda would operate and manage the business. A Montana corporation, Fort Union Inn, Inc., was created for this purpose.

¶6 Koelzer and Brown conveyed title to Sammy and Darlene by warranty deed on October 31, 1996. Shortly after the sale, on November 11, 1996, Koelzer advised the Companies by fax that the Inn had been sold to Dale Lewis and his family and requested that they "release information to Dale and work with him on the structural damage . . . discussed in the past."

¶7 Approximately a year later, in September 1997, Dale and Shawonda obtained an estimate of approximately $91,000 to repair damage to the Inn. A few days after receiving this estimate they filed their complaint in the Sixteenth Judicial District Court seeking compensation for damages. Although the Inn was still titled in their name, Sammy and

Darlene Lewis were not parties to the suit, and the complaint listed Dale and Shawonda as owners of the property.

¶8 On November 25, 1997, Sammy and Darlene filed for Chapter 7 bankruptcy protection in Wyoming. Their petition listed the Inn as an asset but not the pending lawsuit. Sammy and Darlene Lewises' debts were discharged on March 11, 1998. On December 11, 1998, the lender approached Dale and Shawonda to see if they would assume the existing loan on the Inn. They agreed and, a week later, Sammy and Darlene quitclaimed their interest in the Inn to Dale and Shawonda.

¶9 Throughout this time, of course, discovery was proceeding on the lawsuit. When the Companies discovered that Dale and Shawonda were not the owners of the Inn at the time the suit was filed, they moved the District Court for summary judgment.

¶10 On August 6, 1999, the District Court granted summary judgment on Dale and Shawonda's nuisance claim. It determined that, under § 27-30-101(2), MCA, it had no authority to consider a nuisance claim against the Companies separate from a general negligence claim.

¶11 On March 3, 2000, the District Court granted summary judgment and dismissed the negligence, trespass and negligent infliction of emotional distress claims. The District Court held that Dale and Shawonda had no standing to assert a claim for damages arising before December 18, 1998, when they acquired title to the Inn. With regard to claims arising after that date, the District Court concluded that Dale and Shawonda had assumed the risk of these damages when they purchased the property.

## ISSUES

¶12 Dale and Shawonda raise the following issues on appeal:

¶13 Issue 1. Did the District Court err when it held that Dale and Shawonda do not have standing to state a claim for damages occurring prior to December 18, 1998?

¶14 Issue 2. Did the District Court err when it held that Dale and Shawonda assumed the risk of damages occurring after December 18, 1998?

¶15 Issue 3. Did the District Court err when it dismissed Dale and Shawonda's nuisance claims?

## DISCUSSION

¶16 Our standard of review for a district court's order granting summary judgment is de novo. *Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶ 11, 302 Mont. 141, ¶ 11, 13 P.3d 384, ¶ 11. Therefore, we will affirm the District Court when the pleadings, depositions, answers to interrogatories, admissions and affidavits reveal no genuine issue of material fact and we determine that the moving party is entitled to judgment as a matter of law. Rule 56, M.R.Civ.P. The moving party has the initial burden of demonstrating that no genuine issues of material fact exist. The burden then shifts to the non-moving party to prove, by more than mere denial or speculation, that a genuine issue does exist. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.

## I. Pre-Purchase Damages

¶17 Dale and Shawonda's complaint seeks to recover damages that occurred before they acquired legal title to the Inn from Dale's parents. However, the general rule is that persons cannot recover for damages to property that they do not own. See *Carter v. Department of Trans*. (1995), 274 Mont. 39, 42, 905 P.2d 1102, 1104 (the injury must be personal to the plaintiff); and *Warth v. Seldin* (1975), 442 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343, 355 (the plaintiff must assert his own legal rights and not the legal rights or interests of third parties). See also 59 Am. Jur. 2d, Parties § 32. To overcome the motion for summary judgment, therefore, Dale and Shawonda must show that they had a property interest in either the Inn or the prior damage claim at the time that they filed their suit.

¶18 All parties agree that, although Dale and Shawonda considered themselves to be the owners of the Inn, they did not obtain legal title to the property until December 18, 1998- well after they filed suit. Instead, Dale and Shawonda contend that they owned the pre-existing damage claim, arguing that Koelzer assigned the damage claim to them when he faxed the Companies, informing them that the Inn had been sold and asking them to "release information to Dale and work with him on the structural damage." We disagree. The fax transmitting this message is not, itself, a valid assignment, and the record before us contains no other evidence that the claim was assigned.

¶19 In their opening brief, Dale and Shawonda argue that the question of whether the November 11, 1996, fax constitutes a valid assignment is a disputed question of fact for

the jury to decide. We disagree. Even construing all of the facts in the light most favorable to Dale and Shawonda-that is, even accepting that the fax was intended by all the parties to be an assignment of the claim-the fax fails as an assignment as a matter of law.

¶20 Property damage claims have long been recognized in Montana as assignable. *Caledonia Insurance Co. v. Northern Pacific Ry. Co.* (1905), 32 Mont. 46, 79 P. 544. If the claim is severed from the real estate by a transfer of the property without assignment, the claim, as a chose in action, is intangible personal property. Section 1-1-205(1), MCA. Under the applicable statute of frauds, contracts for the sale of personal property over $5000 in value must be in writing, must reasonably identify the subject matter and must state the price. Section 30-1-206, MCA. Dale and Shawonda's claim exceeds $5000 and so is subject to the statute. The November 11, 1996, fax does not meet the requirements of the statute and, as a matter of law, is not an enforceable assignment.

¶21 In their reply brief, Dale and Shawonda argue that, although the fax itself may not be a valid assignment, it is evidence that an assignment occurred. This contention is refuted, however, by their own concession in the record that, if the fax qualifies as an assignment at all, it would have been to Dale's parents, not to Dale and Shawonda. Counsel for Dale and Shawonda conceded that there was no assignment of the damage claim to Dale and Shawonda:

> Now, while Deposition Exhibit 76 [the fax] is not a written assignment of such, it does confirm Dale and Shawonda's claim that when the hotel was purchased, that Mr. Koelzer and his partner assigned the claim to the family; that when the Lewises - that when the Lewis family looked into purchasing the hotel, or the Inn, that they understood that whoever purchased the hotel was purchasing the claim as well.
>
> Now, after the predecessor's owners claim was assigned to the Lewises, and when I say the Lewises, in this case it would be legally the senior Lewises, . . . .

¶22 The assignment, if there was one, was from the Koelzer partnership to Sammy and Darlene. There is no evidence in the record that Sammy and Darlene ever transferred their interest in this claim to Dale and Shawonda and, like their other assets, it would have ultimately been transferred to the Wyoming bankruptcy trustee.

¶23 We conclude that there is no genuine issue of material fact as to the ownership of the Inn or the assignment of the pre-existing damage claim. Moreover, based on these facts,

we conclude that Dale and Shawonda had no standing to bring a claim for damages occurring prior to December 18, 1998, and the Companies were entitled to judgment on this issue as a matter of law.

## II. Post-Purchase Damages

¶24 In addition to the pre-existing damages discussed above, Dale and Shawonda's complaint also sought compensation for damages done to the Inn after their purchase. The Companies pled the affirmative defense of assumption of risk, arguing that the couple knew when they purchased the Inn that the past damages were likely to be recurrent or continuing. The District Court agreed and granted summary judgment based on the affirmative defense.

¶25 We note, initially, that assumption of risk is no longer available as a separate affirmative defense in negligence cases. *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 477, 872 P.2d 782, 790. Instead, having adopted a system of comparative negligence, the affirmative defense of assumption of risk merges into the general scheme of liability assessment in which the conduct of the parties must be compared based on evidence of negligence and contributory negligence, as established by reasonable and prudent person standards. Regardless, the question here seems to be less a question of whether Dale and Shawonda "negligently" purchased an Inn that they knew might be subject to future damage than whether those future damages were sufficiently foreseeable to be taken account of in the purchase price of the Inn. In any case, the question is one of fact and should have been left for the jury.

## III. The Nuisance Claim

¶26 The District Court granted summary judgment and dismissed Dale and Shawonda's nuisance claim in an order dated August 6, 1999. The negligence, trespass and negligent infliction of emotional distress claims were dismissed in a separate order filed on March 5, 2000. In their opening brief, Dale and Shawonda contend that the District Court erred when it dismissed the nuisance claim. The Companies argue that the question is not properly before this Court because Dale and Shawonda's notice of appeal only refers to the District Court's order filed on March 5, 2000. We agree.

¶27 Rule 4(c), M.R.App.P., provides that "[t]he notice of appeal shall specify the party or parties taking the appeal; and shall designate the judgment, order or part thereof appealed

from." Dale and Shawonda's notice of appeal states that they are appealing from "the District Court's Order granting Defendants' summary judgment in this action. The Court's Order was filed on March 5, 2000, and a Notice of Entry of Judgment filed by Defendants on March 8, 2000." As noted above, the District Court's order dismissing the nuisance claim was entered on August 6, 1999, and was not referenced in the notice of appeal. We will not consider an appeal from an order not designated in the notice of appeal. *State v. Spotted Blanket*, 1998 MT 59, ¶ 12, 288 Mont. 126, ¶ 12, 955 P.2d 1347, ¶ 12; *State v. Delap* (1989), 237 Mont. 346, 350-51, 772 P.2d 1268, 1271. Accordingly, Dale and Shawonda's appeal from the District Court's August 6, 1999, order granting summary judgment on the nuisance issue is dismissed.

IV. The Cross-Appeal

¶28 The Companies ask this Court to find that summary judgment should have been awarded on the grounds that there was no genuine issue of material fact on the issue of causation. They cite, in the record, to a discussion by Dale and Shawonda's expert, Alan Frohberg, in which he appears to concede that data from the Companies' expert's report indicates that groundwater leaking from Company property could not have caused the damage to the Inn and that he has no other data from which to make a conclusion. Even if we were to accept the Companies' interpretation of Mr. Frohberg's testimony, Dale and Shawonda cite to other evidence in the record that identifies seepage from the Companies' ponds as the cause of damage to nearby structures. We conclude that the Companies have failed to demonstrate that there is no genuine issue of material fact on the issue of causation and, therefore, summary judgment on that basis in not appropriate.

## CONCLUSION

¶29 The District Court's grant of summary judgment in favor of the Companies for damages accruing prior to December 18, 1996, is affirmed. The District Court's grant of summary judgment for damages arising after that date is reversed. Dale and Shawonda's appeal of the August 6, 1999 order dismissing their nuisance claim is dismissed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ TERRY N. TRIEWEILER

/S/ JIM REGNIER

/S/ PATRICIA COTTER

Chief Justice Karla M. Gray did not participate.

Justice James C. Nelson specially concurs and dissents.

¶30 I concur in our analysis and resolution of Issues 1 and 3. I dissent from our resolution of Issue 2. Therefore, I would not address the cross-appeal.

¶31 While, as the Court recognizes, assumption of risk may not technically be the appropriate theory to refute the Lewises' claim for post-purchase damages, it is undisputed that they discovered the extensive damage to the Inn well prior to their purchase of the property. Apparently unconcerned about the damage which they discovered in 1996, the Lewises nonetheless assumed the loan for the Inn in 1998, the remaining balance of which, according to admissible evidence in the summary judgment record, was less than the cost to repair the damages at that time. In short, the undisputed facts show that no recoverable damages occurred after the Lewises' acquired the Inn.

¶32 If the object of Lewises' exercise was to buy a big lawsuit against some deep pockets, it appears they succeeded. I would affirm summary judgment in favor of the Companies on Issues 1, 2 and 3.

/S/ JAMES C. NELSON